UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH BELCHER-GEORGE,<br><br>     Plaintiff,<br>  v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>     Defendant. | Case No. CV 10-2559-OP<br><br>MEMORANDUM OPINION; ORDER |

  The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

 [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

 [2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered the opinion of the treating physician; and
2. Whether the ALJ posed a complete hypothetical to the vocational expert ("VE") and properly considered side effects of Plaintiff's medications.

(JS at 2, 19.)

# II.

# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

///

## III.

## **DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairment of degenerative disc disease.  (Administrative Record ("AR") at 12.)  He concluded that Plaintiff's diagnosis for hepatitis C was not a severe impairment.  (Id.)  He also found that her alleged mental impairments, depression and anxiety, "do not cause more than minimal limitation" in her ability to perform basic mental work activities and, therefore, were non-severe.  (Id.)

The ALJ further found that Plaintiff had the RFC to perform light work with the following limitations:  lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk about six hours in an eight hour workday; and sit about six hours in an eight hour workday with a sit/stand option. (Id. at 16.)  The ALJ concluded that Plaintiff would not be able to perform her past relevant work as a waitress.  (Id. at 18.)

Relying on the testimony of the VE to determine the extent to which Plaintiff's limitations eroded the occupational base of unskilled work at all exertional levels, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Id. at 40-41.)  Based on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of such light work as assembler, inspector, and packager, and such sedentary work as sorter, inspector, and assembler.  (Id. at 19.)

**B.    The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.**

On March 28, 2008, Plaintiff's treating physician, Mark Jaffe, M.D., completed a Mental Disorder Questionnaire Form on behalf of Plaintiff.  (Id. at 279-84.)  In that form, he noted that Plaintiff admitted to being tearful and fearful

frequently during the day and to having difficulty completing her daily household chores; she was oriented x3; her memory and concentration were impaired; she had perceptual and thinking impairment, and judging impairment; she admitted to being depressed and having insomnia, decreased energy, feelings of guilt or worthlessness; she admitted to having paranoid ideation believing that people are trying to kill her and to having frequent panic attacks; he observed that she was anxious during the evaluation; she admitted to doing her shopping using public transportation, paying her bills, and taking care of her personal hygiene; she admitted to having a personal inheritance sold for failure to pay rent; she stated her day began usually around 9:30 a.m. and ended around 1:00 a.m.; she admitted to "affective [sic]" communication with family, neighbors, and landlords but stated that her husband is the primary facilitator in those relationships; she stated she needs her husband's assistance to pay her bills on time as a result of her changed condition; she admitted to having difficulty concentrating, completing daily tasks, and routine household tasks without frequent distractions; she prefers written instructions for assigned work; and she admitted she was a good employee in the past. (Id. at 279-83.) Dr. Jaffe diagnosed Plaintiff with a Major Depressive Disorder, Recurrent, Moderate. (Id. at 284.) He indicated he had first examined her on July 5, 2007, last examined her on March 20, 2008, and that her visits were monthly. (Id.)

The ALJ indicated the following regarding Dr. Jaffe's opinion:

> A mental disorder questionnaire completed by the claimant's treating doctor, Dr. Mark Jeffe [sic], from the outpatient parole clinic, stated that the claimant admits to being tearful and fearful during the day, having feelings of guilt, having difficulty completing household chores, having problems with concentration, memory, and perceptual thinking. (Exhibit 15F). However, despite these symptoms, Dr. Jeffe [sic] noted that the claimant admitted that she is able to do her shopping, use public

4

        transportation, pay her bills, and take care of her personal hygiene. (Exhibit 15F). In addition, as stated above, a review of the treatment notes indicate that the claimant's symptoms are stabilized with medication and was able to participate in vocational rehabilitation programs and attend writing classes. (Exhibit 15F; 18F).

(AR at 13-14.)

        Plaintiff contends that the ALJ failed to properly consider Dr. Jaffe's opinion or to provide specific and legitimate reasons, supported by substantial evidence, to reject that opinion. (JS at 4.) Specifically, she claims that in order to support his decision, the ALJ impermissibly misrepresented Dr. Jaffe's findings regarding her ability to pay her bills. (Id. at 4-5.) She also claims the ALJ failed to consider Dr. Jaffe's "serious diagnosis," a diagnosis that, she conclusorily claims, indicates that Plaintiff "would have difficulty sustaining full-time employment. For example, the fact that plaintiff would have a diminished ability to think or concentrate, or indecisiveness nearly everyday would significantly impact her job performance." (Id. at 6.) She claims that the ALJ also failed to address Dr. Jaffe's finding that Plaintiff's judgment was impaired, claiming "a person with an impaired judgment . . . would be extremely limited in her ability to remember work-like procedures, her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, or her ability to get along with others without distracting them or exhibiting behavioral extremes." (Id.) She complains the ALJ failed to address Plaintiff's apparent anxiousness and autonomic reaction to the evaluation, the fact that she was having frequent panic attacks, and had decreased energy, all of which she claims would impact her work-related performance or attendance. (Id.) Finally, she contends there are "numerous examples" in the progress notes, which fully support Dr. Jaffe's findings, and dispute the ALJ's statement that Plaintiff's symptoms are stabilized with medication and that she was able to participate in

vocational rehabilitation programs and attend writing classes. (Id. at 6-7.) Plaintiff provides no authority for these self-serving and conclusory statements. Further, the Court finds they are unsupported by any evidence of record.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Preliminarily, the Court notes that the the questionnaire completed by Dr. Jaffe primarily reflects Plaintiff's self-reported symptoms (Plaintiff "admits" to being tearful, fearful, feelings of guilt, inability to complete household chores, frequent panic attacks, decreased energy, problems with concentration, and so on). These statements do not reflect Dr. Jaffe's opinion, but are simply a recitation of what Plaintiff reported to him. Thus, it is not entirely clear that the ALJ actually discounted Dr. Jaffe's conclusions; he merely found, based on the substantial evidence of record, that the alleged diagnosed impairment was not severe.

Plaintiff's arguments that the ALJ failed to address Dr. Jaffe's finding that her judgment was impaired and that she was anxious at the evaluation also is unavailing. An ALJ is not required to address every piece of information in the record. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003 (ALJ need not discuss "evidence this is neither significant nor probative"). Dr. Jaffe does not discuss the extent to which his finding that Plaintiff had a "judging impairment," or exhibited anxiety in the evaluation session, would affect Plaintiff's ability to work. In fact, despite being asked to specifically describe Plaintiff's "ability to adapt to stresses common to the work environment, including decision making, attendance, schedules, and interaction with supervisors," and to describe how these abilities may have changed as a result of her condition, he merely noted that she "[a]dmits to having been in the past a good employee . . . and attendance schedule and interactions with supervisor was [sic] appropriate."

7

(AR at 282.) Accordingly, after reviewing all of the evidence of record regarding Plaintiff's mental impairment, including Dr. Jaffe's notes and conclusions, the ALJ properly found any limitations to be non-severe, as discussed below.

To the extent, if any, the ALJ may have rejected Dr. Jaffe's conclusions, the Court agrees with the Commissioner that the ALJ provided numerous specific and legitimate reasons for doing so, and for concluding that Plaintiff's mental limitations were non-severe. (JS at 10.) In fact, he carefully reviewed the entire medical record and opinion evidence regarding Plaintiff's alleged depression and anxiety. (AR at 12-16.)

He first reviewed Plaintiff's mental health treatment while in prison from October 2006 through June 2007. He noted that treatment records from the California Department of Corrections reflected mild symptoms of depression and some anxiety. (Id. at 13 (citing id. at 153-61).) Although she originally exhibited poor social skills, poor recall, poor speech, confusion, and poor concentration (id. (citing id. at 171, 174, 177), psychotropic medications improved her symptoms, and Plaintiff reported that the medications reduced her anxiety, improved her sleep, and enabled her to participate in full-day business vocational classes. (Id. (citing id. at 155, 160-61); see Warre v. Barnhart, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility under the Act). Plaintiff herself stated "it's amazing what medications can do." (AR at 161.) The ALJ noted that participation in business classes requires significant concentration, motivation, and social interaction. (Id. at 13); see Magallanes, 881 F.2d at 755 (court may draw reasonable inferences from the record). There is no indication Plaintiff had difficulty with the classes. (AR at 13.)

The ALJ also evaluated Plaintiff's records from the parole outpatient clinic and fully explained why he found these notes also supported a finding that her

mental impairments were not severe. (Id.) He reviewed treating notes reflecting Plaintiff's desire to participate in a vocational rehabilitation program and stating she had acquired a position as a speaker for the Substance Abuse Community Outreach Program. (Id. (citing id. at 285-89, 305-12.) In addition to these and other concurrent activities (attending English classes and earning above average grades), he noted that Plaintiff's medication had stabilized her, she was maintaining with no psychotic symptoms, or suicidal or auditory hallucinations, and she was behaving pleasantly in her interactions. (Id. (citing id. at 285-89, 305-12.)

After reviewing these records, the ALJ reviewed the questionnaire completed by Dr. Jaffe as noted above. (Id. at 13-14.) He properly noted the inconsistencies in Plaintiff's complaints to Dr. Jaffe, e.g., she reported being tearful, fearful, feeling guilty, having difficulty completing chores, and problems with concentration, memory and perceptual thinking; yet, Dr. Jaffe also noted she could shop for herself, use public transportation, pay her own bills, handle her own funds, and care for her personal hygiene. Thomas, 278 F.3d at 958-59 (an ALJ may consider inconsistencies in plaintiff's testimony, or between his testimony and his conduct); see also Morgan, 169 F.3d at 600 (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, and daily activities inconsistent with total disability).

The ALJ then reviewed the consultative examination report of Sohini P. Parikh, M.D., consultative examining psychiatrist. (AR at 14 (citing id. at 206-12.) He noted that Dr. Parikh performed a complete psychiatric evaluation of Plaintiff and found no mental limitations in her ability to reason and make social, occupational, and personal adjustments. (Id. (citing id. at 211-12.) He highlighted

Plaintiff's ability to use public transportation, manage funds and pay bills, care for her personal hygiene, attend church, attend AA, complete household tasks, participate in all activities at a rehabilitation program, and get along with family, friends, and neighbors. (Id. (citing id. at 208).) Dr. Parikh found Plaintiff cooperative and well-groomed, with logical thoughts, ability to focus and concentrate, to follow simple and complex instructions, and make decisions. (Id. (citing id. at 208, 211.) Although Plaintiff reported feelings of hopelessness and worthlessness, Dr. Parikh opined that her mental health would improve if she refrained from using drugs and alcohol. (Id. (citing id. at 210).)

Finally, the ALJ reviewed the psychiatric review technique assessment completed by R. Starce, Ph.D. (Id. (citing id. at 232-50).) Dr. Starce found Plaintiff moderately impaired in social functioning and concentration, persistence, and pace; but also found her capable of sustaining concentration, persistence and pace, and interacting well socially. (Id. (citing id. at 243, 245). The ALJ explained that Dr. Starce did not have a chance to review the entire medical record and did not know that the parole outpatient clinic records indicated that Plaintiff's condition improved with medication, nor that she participated in vocational rehabilitation programs and writing classes. (Id.)

Based on all of the above records, the Court finds that to the extent, if any, he rejected Dr. Jaffe's opinions, the ALJ properly provided specific and legitimate reasons to support his determination that Plaintiff's mental restrictions and limitations were mild and, therefore, non-severe. Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849. Thus, there was no error.

**C.    Hypothetical to the VE and Side Effects of Medications.**

    **1.    Hypothetical to the VE.**

Plaintiff contends that the ALJ failed to pose a complete hypothetical

question to the VE because the ALJ's hypothetical did not include the limitations reflected in Dr. Jaffe's March 28, 2008, report. (JS at 19, 21-22.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1043 (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

As the Court concluded above, the ALJ properly rejected the opinions of Dr. Jaffe as reflected in his March 28, 2008, report. Accordingly, the ALJ was not obligated to include those limitations in his hypothetical to the VE. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland, 861 F.2d at 540; Martinez, 807 F.2d at 773-74. Thus, the ALJ did not err by presenting an incomplete hypothetical question to the VE.

### 2. Side Effects of Medications.

Plaintiff also claims that the ALJ failed to mention that "plaintiff is taking numerous medications, [which] clearly . . . have significant side effects that must be considered when determining whether plaintiff can perform work on a full-time basis." (Id. at 19.) Plaintiff's argument is without merit.

1    Under Ninth Circuit law, the ALJ must "consider *all* factors that might have
2 a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9
3 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human
4 Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)). Such
5 factors "may include side effects of medications . . ." Id. at 818. When the ALJ
6 disregards the claimant's testimony as to subjective limitations of side effects, he
7 must support that decision with specific findings similar to those required for
8 excess pain testimony, as long as the side effects are in fact associated with the
9 claimant's medications. See Varney, 846 F.2d at 545; see also Muhammed v.
10 Apfel, No. C 98-02952 CRB, 1999 WL 260974, at *6 (N.D. Cal. 1999).

   There is no indication in the record that Plaintiff ever was experiencing any side effects severe enough to impair or interfere with her ability to work. See, e.g., Osenbrock, 240 F.3d at 1164 (side effects properly excluded because "no evidence of side effects severe enough to interfere with . . . ability to work," even though "[t]here were passing mentions of the side effects" in "some of the medical records"); Miller, 770 F.2d at 849 (no clinical evidence that narcotics impaired ability to work). She did not testify to any side effects at the hearing. (AR at 22-36.) While Plaintiff occasionally mentioned to her doctors what may have been mild side effects of the medication – e.g., complaining the medications were not working (see, e.g., id. at 153 (Effexor works better, Cymbalta not working)); or caused physical symptoms (see, e.g., id. at 159 (Cymbalta gives her a "queasy stomach"), 287-88 (Lamictal made her feel badly and caused headaches), 290 (Wellbutrin gave her headaches/dizziness), 291 (Vistaril caused an overactive bladder); or that she had side effects from tapering off her medication (see, e.g., id. at 305); most of the progress notes indicate she had no side effects from her medications (see e.g., id. at 155 (no side effects to Cymbalta and Wellbutrin, 156 (no side effects to psychotropics), 160 (same), 165 (denies side effects), 170, 194).)

Plaintiff's limited self-reporting, to which the doctor usually responded by decreasing or discontinuing the offending medication, fails to provide substantial evidence of any ongoing or disabling side effects, particularly considering the ALJ's finding that Plaintiff was not completely credible, a finding Plaintiff does not contest. Thomas, 278 F.3d at 960 (dismissing side effect allegations where there was no supporting objective evidence and plaintiff found generally not credible).

Based on the foregoing, the Court finds there was no error in the ALJ's failure to mention the alleged side effects of Plaintiff's medications.

## IV.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: October 25, 2010

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge